<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE DUTCH POT JAMAICAN RESTAURANT, INC., <br><br> Plaintiff, <br><br> v. <br><br> XPAKK, LLC, <br><br> Defendant. | Civil Action No. 25-04036 (GC) (TJB) <br><br> <u>**MEMORANDUM OPINION**</u> |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon Plaintiff The Dutch Pot Jamaican Restaurant, Inc.'s Motion for Default Judgment against Defendant XPakk, LLC pursuant to Federal Rule of Procedure (Rule) 55(b). (ECF No. 9.) The Defendant has not filed opposition papers nor otherwise appeared in this action. The Court has carefully considered Plaintiff's submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For reasons set forth below, and other good cause shown, Plaintiff's Motion is **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**

Plaintiff is a Florida corporation that operates a chain of restaurants throughout southern Florida. (ECF No. 1 ¶ 1.) Defendant is a limited liability company in New Jersey that supplies custom paper products to businesses nationwide. (*Id.* ¶ 2.) Plaintiff paid Defendant $123,125 for

custom paper products, but Defendant only delivered $23,125 worth of products.[1]  (*Id.* ¶¶ 10, 22.)

Later, Plaintiff inadvertently paid Defendant an additional $3,022.50 and Defendant did not

respond when Plaintiff asked for the funds to be returned.  (*Id.* ¶¶ 24-26.)

This cases arises from Defendant's alleged breach of its contractual obligations to Plaintiff

when it failed to deliver custom paper products.  (*Id.* ¶¶ 7-12, 17, 19, 22-23.)  On May 8, 2025,

Plaintiff brought suit against Defendant for breach of contract, breach of the implied duty of good

faith and fair dealing, unjust enrichment, conversion, and promissory estoppel.  (*Id.* ¶¶ 27-48.)  On

May 22, 2025, Plaintiff filed proof of service on Defendant.  (ECF No. 6.)  After Defendant failed

to answer, Plaintiff obtained a Clerk's Entry of Default on June 12, 2025.  Plaintiff now moves for

default judgment.  (ECF No. 9.)  To date, Defendant has not responded to this Motion or otherwise

appeared in this action.

## II.    LEGAL STANDARD

Under Rule 55(a), a plaintiff may request that the clerk of court enter default as to "a party

against whom a judgment for affirmative relief is sought [who] has failed to plead or otherwise

defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).  Once a default

has been entered, the plaintiff may then seek the entry of a default judgment—either by the clerk

or the court itself—under Rule 55(b).  Fed. R. Civ. P. 55(b).

A party is not entitled to a default judgment as of right; "the entry of such a judgment is

left primarily to the discretion of the district court." *DirecTV, Inc. v. Asher*, Civ. No. 03-1969, 2006

WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d

Cir. 1984)).  Because default judgments prevent the resolution of claims on their merits, the Court

---

[1]    While Plaintiff states that it received $23,000 worth of goods (ECF No. 1 ¶ 22), the listed values for each type of good received, added together, equals $23,125 (*See* ECF No. 9-3 ¶ 18 (enumerating values of goods received)).

"does not favor entry of defaults and default judgments." *United States v. Thompson*, Civ. No. 16-0857, 2017 WL 3634096, at *1 (D.N.J. July 20, 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Following an entry of default, "[a] defendant is deemed to have admitted the factual allegations of the [c]omplaint . . . except those factual allegations related to the amount of damages." *DirecTV, Inc.*, 2006 WL 680533, at *1. Still, "[t]he Court need not accept the moving party's legal conclusions, because [e]ven after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* (second alteration in original) (citation and internal quotation marks omitted).

"Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *The Prudential Ins. Co. of Am. v. Bramlett*, Civ. No. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). "Then, 'the Court must determine (1) whether there is sufficient proof of service, (2) whether a sufficient cause of action was stated, and (3) whether default judgment is proper.'" *G & G Closed Cir. Events, LLC v. Remsen Assocs., Inc.*, Civ. No. 19-13019, 2021 WL 1139873, at *2 (D.N.J. Mar. 24, 2021) (quoting *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, Civ. No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012)). To determine whether default judgment is proper, the court evaluates "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)); *see*

3

*also Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (same).  If these factors weigh in favor of the moving party, the court may grant default judgment.

III.   **DISCUSSION**

A.   **Subject-Matter & Personal Jurisdiction**

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'"  *Werremeyer v. Shinewide Shoes, Ltd.*, Civ. No. 19-10228, 2023 WL 6318068, at *2 (D.N.J. Sept. 28, 2023) (citations and internal quotations omitted).

This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different [s]tates."  28 U.S.C. § 1332(a)(1).  Plaintiff alleges damages in the amount of $103,022.50 plus interest, which satisfies § 1332's amount-in-controversy requirement.  (ECF No. 9; ECF No. 9-1 at 15-18.)[2]  Plaintiff has also established complete diversity.  Plaintiff is a corporation registered in Florida that operates in Florida.[3]  (ECF No. 1 ¶ 1; ECF No. 9-2 ¶ 5.)  As alleged in the Complaint—which the Court assumes as true for the purposes of this Motion, *Vaswani, Inc. v. Atl. Enters. Ltd*, Civ. No. 22-00137, 2023 WL 4740905, at *13 (D.N.J. July 25, 2023) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990))—Defendant is registered in New Jersey and appears to be a citizen

---

[2]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]     "The citizenship of a corporation is both its state of incorporation and the state of its principal place of business" *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018).

of a different state than Plaintiff, creating complete diversity.[4]  (ECF No. 9-1 at 9-10; ECF No. 9-2 ¶¶ 6-10.)

The Court also has general personal jurisdiction over Defendant.  "'[F]or the purposes of general personal jurisdiction, a limited liability company's citizenship is that of its principal place of business and state of [formation].'"  *PSC EHC Acquisition, LLC v. Vigneri*, Civ. No. 22-02428, 2024 WL 3361577, at *3 (D.N.J. July 10, 2024) (second alteration in original) (quoting *Tri-Union Seafoods, LLC v. Ecuatorianita*, Civ. No. 20-9537, 2021 WL 1541054, at *3 (Apr. 20, 2021)).  The Complaint alleges that Defendant is incorporated in New Jersey, with business addresses in Bridgewater and Freehold, New Jersey.  (ECF No. 1 ¶ 2; ECF No. 9-1 at 9-10; ECF No. 9-2 ¶ 8.)  Therefore, the Court has personal jurisdiction over Defendant.

### B.    Service of Process

Under Rule 4(h)(1)(A), limited liability companies may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual[.]"  Fed. R. Civ. P. 4(h)(1)(A).  Rule 4(e)(1)

---

[4]    For an LLC, the Court "determine[s] citizenship by looking at the citizenship of each of its members[.]" *Michael E. Panebianco ACC Fam. Tr. v. Vet Cellect, LLC*, Civ. No. 23-01943, 2025 WL 624649, at *2 n.1 (D.N.J. Feb. 26, 2025) (citing *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).  In support of its Motion, Plaintiff submitted a declaration from counsel attaching Defendant's Business Entity Status Report, which confirms Defendant is registered in New Jersey.  (ECF No. 9-2 ¶ 6; *id.* at 5-6.)  There is no indication regarding Defendant's principal(s) and their citizenship.  Plaintiff alleges that "[u]pon information and belief, the managing member of Defendant is a resident of New Jersey" and "[t]here is no reason to suggest that the Defendant is a resident anywhere but in New Jersey." (*Id.* ¶ 7, 9.)  The Third Circuit has held that "'a plaintiff need not affirmatively allege the citizenship of each member of a defendant LLC if it is unable to do so after a reasonable investigation.'"  *Lopez v. Nationstar Mortg. LLC*, Civ. No. 22-6384, 2023 WL 5164120, at *6 n.9 (D.N.J. Aug. 11, 2023) (quoting *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 110 (3d Cir. 2015)).  A plaintiff "should consult the sources at its disposal, including court filings and other public records. If, after this inquiry, the plaintiff has no reason to believe that any of the association's members share its state of citizenship, it may allege complete diversity in good faith." *Lincoln Ben. Life Co.*, 800 F.3d at 108.  The onus is then on the defendant to identify a member that destroys diversity. *Id.*  Plaintiff has met its burden here.

provides that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1).

In New Jersey, personal service is the primary method of service. *Trs. of Refrigeration Air Conditioning & Serv. Div. Pension Fund, Welfare Fund, Annuity Fund, Educ. Fund, Indus. Find & Int'l Training Funds v. P.J.M. Mech. Contractors, Inc.*, Civ. No. 23-20438, 2024 WL 5087983, at \*4 (D.N.J. Dec. 12, 2024). However, New Jersey permits substituted service when personal service cannot be effectuated. *Id.* (citation omitted). Notably, "New Jersey law permits plaintiffs to serve process on corporate defendants by serving the State of New Jersey's Department of the Treasury[.]" *Id.* (collecting cases); N.J. Stat. Ann. § 2A:15-30.1(1)(b) (detailing that for business entities registered in New Jersey, process may be served on the State agency with which the business entity is registered if that business entity has not re-registered or failed to maintain a registered address or agent as required by law). Where plaintiffs have unsuccessfully attempted service multiple times at a defendant's business address and then served the State Treasury, courts have found sufficient substituted service of process. *See, e.g.*, *P.J.M. Mech. Contractors, Inc.*, 2024 WL 5087983, at \*5 (finding sufficient service of process where "[the p]laintiffs attempted unsuccessfully to serve [d]efendant three times at [d]efendant's main business address" and "also attempted to serve [d]efendant at a second address where [d]efendant purportedly conducted business" before plaintiffs "served the Complaint on the State Treasury pursuant to N.J. Stat. Ann. § 2A:15-30.1."); *Trs. of United Food & Com. Workers Union v. Union Org. for Soc. Servs.*, Civ. No. 22-00541, 2023 WL 3862039, at \*3 (D.N.J. June 6, 2023) ("[The p]laintiffs effectuated service on [d]efendant by personally serving the New Jersey Department of Treasury in accordance with state law on June 7, 2022, satisfying the requirements of Rule 4(h).").

Plaintiff has properly effected service here.  Plaintiff submitted a declaration from counsel detailing that Plaintiff attempted unsuccessfully to serve Defendant multiple times at both the Bridgewater and Freehold addresses, the Bridgewater address being the address for Defendant's registered agent for service of process.  (ECF No. 9-2 ¶ 12; *id.* at 5-6 (Defendant's Business Entity Status Report); *id.* at 13-14 (process server affidavits confirming multiple failed attempts at service).)  The addresses either did not exist or the entity was unknown at those addresses.  (*Id.* at 13-14.)  Plaintiff subsequently served the Complaint on the New Jersey Department of the Treasury pursuant to N.J. Stat. Ann. § 2A:15-30.1.  (*Id.* ¶ 13.)  Such service is proper under New Jersey law and Rule 4(h)(1)(A).

C.      **Sufficiency of Cause of Action**[5]

1.      ***Breach of Contract***

To state a claim for breach of contract, a "[p]laintiff must allege that '(1) a contract [existed] between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations.'" *Michael E. Panebianco ACC Fam. Tr., LLC*, 2025 WL 624649, at *3 (second alteration in original) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)).  Accepting the allegations in the complaint as true, Plaintiff has satisfied each of these elements.  *Swift v. Pandey*, Civ. No. 13-00650, 2023 WL 8232853, at *7 (D.N.J. Nov. 28, 2023) ("Generally, courts treat all pleadings and allegations of a plaintiff as true on a motion for default judgment."), *aff'd as modified,* Civ. No. 22-2718, 2025 WL 457307 (3d Cir. Feb. 11, 2025).  Plaintiff has established the existence of a valid contract

---

[5]      The parties' contract provides "[t]his agreement shall be governed by and construed under the laws of the state or country where [Defendant] is located."  (ECF No. 1 at 21.)  As previously discussed, Defendant is incorporated in New Jersey with business addresses in Bridgewater and Freehold.  Thus, New Jersey law applies.

between Plaintiff and Defendant (ECF No. 1 ¶¶ 7-10, 28; *id.* at 19-25 (invoice, terms, and payment details); *id.* at 32-36 (contract amendment)), that Defendant breached that contract by failing to deliver the agreed-upon goods after Plaintiff had timely paid (*id.* ¶¶ 11-23, 30), that Plaintiff suffered damages in that  it did not receive the goods it paid for (*id.* ¶¶ 23, 26, 32), and that Plaintiff performed its obligations pursuant to the contract by timely making payments (*id.* ¶¶ 10, 29).  The Court finds Plaintiff has established a cause of action for breach of contract.

### 2.    *Unjust Enrichment*

Plaintiff also seeks default judgment on its claim for unjust enrichment.  (ECF No. 9-1 at 13.)  Unjust enrichment is not an independent theory of liability, but rather the basis for a claim of quasi-contract liability.  *Petri v. Drive New Jersey Ins. Co.*, Civ. No. 21-20510, 2024 WL 1620374, at *10 (D.N.J. Apr. 15, 2024) (quoting *Mendez v. Avis Budget Grp., Inc.*, No. 11-6537, 2012 WL 1224708, at *7 (D.N.J. Apr. 10, 2012)).  It is an alternative claim for relief in the event that there was no valid contract between the parties.  *Cornell Companies, Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 265 (E.D. Pa. 2007).  However, "the existence of a contract would preclude recovery under unjust enrichment[,]" *id.* (quoting *United States v. Kensington Hosp.,* 760 F. Supp. 1120, 1135 (E.D. Pa. 1991)), and a plaintiff cannot recover on both a breach of contract and an unjust enrichment claim, *Petri*, 2024 WL 1620374, at *10 (quoting *Mendez*, 2012 WL 1224708).  Because Plaintiff has adequately stated a breach of contract claim, Plaintiff cannot also recover on its unjust enrichment claim.  *See Samsung SDS Am., Inc. v. PhysIQ, Inc.*, Civ. No. 23-21593, 2024 WL 4589815, at *3 (D.N.J. Oct. 28, 2024).  The Court therefore denies Plaintiff's Motion for Default Judgment as to its unjust enrichment claim.

### 3.    *Breach of Duty of Good Faith and Fair Dealing*

All contracts in New Jersey include an implied duty of good faith and fair dealing, which "'calls for parties to a contract to refrain from  doing anything which will have the effect of

destroying or injuring the rights of the other party to receive the benefits of the contract.'" *Id.* at *3 (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 864 A.2d 387, 398 (N.J. 2005)). "Proof of bad motive is accordingly a critical element of an alleged breach of good faith and fair dealing." *Id.* However, "a plaintiff 'may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim.'" *Rastellis Bros., Inc. v. Just. Gov't Supply, Inc.*, Civ. Civ. No. 24-00390, 2025 WL 399712, at *3 (D.N.J. Feb. 5, 2025) (alterations in original) (quoting *Hahn v. OnBoard LLC*, Civ. No. 09-3639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009)).

Plaintiff alleges that Defendant violated this duty because "[Defendant] failed to tender the contracted-for merchandise and subsequently withheld funds that were due and owing to [Plaintiff] in order to enrich [Defendant] at the expense of [Plaintiff]." (ECF No. 1 ¶¶ 35-36.) This is the same conduct underlying Plaintiff's breach of contract claim. As such, Plaintiff's Motion for Default Judgment must be denied regarding its breach of covenant of good faith and fair dealing claim.[6] *See Rastellis Bros., Inc.*, 2025 WL 399712, at *3.

### 4.    *Conversion*

Conversion is an intentional tort claim. *Rastellis Bros., Inc.*, 2025 WL 399712, at *4. Under New Jersey law, conversion is "'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Id.* (quoting *Barco Auto Leasing Corp. v. Holt*, 548 A.2d

---

[6]    Even if the basis for this claim was not the same conduct underlying Plaintiff's breach of contract claim, Plaintiff has failed to establish its claim for breach of the duty of good faith and fair dealing because it has not alleged bad motive on the part of Plaintiff. Bad motive is a "critical element" of this claim and allegations that a party "refused to pay in full" for a product are insufficient to satisfy this element because these allegations "show only that [a defendant] made financially-motivated decisions[.]" *Samsung SDS Am., Inc.*, 2024 WL 4589815, at *3 (denying default judgment on claim for breach of the duty of good faith and fair dealing).

1161, 1164-65 (N.J. App. Div. 1988)). "While traditionally applied to chattels, 'conversion applies to money, provided that the money ha[s] belonged to the injured party and that it be identifiable.'" *Machne Ohel Moshe D'Krasna, Inc. v. Weizer*, Civ. No. 22-5463, 2023 WL 11228079, at *3 (D.N.J. Aug. 31, 2023) (alteration in original) (quoting *Meisels v. Fox Rothschild LLP*, 222 A.3d 649, 660 (N.J. 2020)). When possession begins lawfully, but "the owner demands return of the property and the possessor refuses, then a conversion has occurred." *Id.* (quoting *Meisels*, 222 A.3d at 661).

Plaintiff's claim for conversion centers on the $3,022.50 Plaintiff erroneously transferred to Defendant in September 2024 and that Defendant did not return upon Plaintiff's request. (ECF No. 9-1 at 13; ECF No. 1 ¶¶ 24-26.) This is separate from the funds transferred by Plaintiff under the parties' contract. *See Kostic v. Seton Hall Univ.*, Civ. No. 20-5566, 2021 WL 9667962, at *5 (D.N.J. May 27, 2021) ("'[A] plaintiff asserting a claim for conversion must establish the defendant violated an independent legal duty and committed a tort, apart from the duty imposed by the contract.'") (quoting *Qingdao Zenghui Craftwork, Co. Ltd. v. Bijou Drive*, Civ. No. 16-6296, 2019 WL 2403197, at *4 (D.N.J. June 7, 2019)). Plaintiff alleges that it demanded Defendant return these funds, but Defendant never responded and retained the funds. (ECF No. 1 ¶¶ 25-26.) Accepting these allegations as true, Plaintiff has adequately stated a claim for conversion. *See Machne Ohel Moshe D'Krasna, Inc.*, 2023 WL 11228079, at *3 (finding the plaintiff properly stated a claim for conversion where it alleged the defendant removed funds from plaintiff's bank accounts and refused to return those funds).

### 5.    *Promissory Estoppel*

To sufficiently state a cause of action for promissory estoppel, a plaintiff must show "'1) a clear and definite promise, 2) made with the expectation that the promisee will rely upon it, 3) reasonable reliance upon the promise, 4) which results in definite and substantial detriment.'"

10

*Rastellis Bros.*, 2025 WL 399712, at \*5 (quoting *Lobiondo v. O'Callaghan*, 815 A.2d 1013, 1020 (N.J. App. Div.), *certif. denied*, 827 A.2d 291 (N.J. 2003)).  But "'[u]nder New Jersey law, liability based on quasi-contractual principles cannot be imposed if an express contract exists concerning the identical matter.'"  *Way v. Arete Automobili Corp.*, Civ. No. 20-13646, 2022 WL 180327, at \*8 (D.N.J. Jan. 20, 2022) (internal quotation marks omitted) (quoting *Freightmaster USA, LLC v. Fedex, Inc.*, 2015 WL 1472665, at \*6 (D.N.J. Mar. 31, 2015)).

In the Complaint, Plaintiff alleges that "[Defendant] promised and assured [Plaintiff] that it would provide a credit for all undelivered merchandise[.]"  (ECF No. 1 ¶ 46; *see also id.* ¶ 21.)  Plaintiff contends that it "reasonably relied on [Defendant's] promise to provide a credit," which serves as the basis for its claim of promissory estoppel.  (*Id.* ¶ 48.)  In the present Motion, Plaintiff argues that it detrimentally relied upon Defendant's promises to deliver goods by a certain date by paying for the goods in advance and not ordering replacement goods.  (ECF No. 9-1 at 13-14.)  However, these promises are all tied to the contract between Plaintiff and Defendant.  Defendant agreed to provide Plaintiff a "credit" because Plaintiff terminated the contract and paid for more goods than Defendant would deliver.  (ECF No. 1 ¶ 21.)  Defendant's promises to deliver goods by certain dates stemmed from the parties' contract under which Defendants agreed to deliver goods on a specific timeline.  (*Id.* at ¶¶ 8, 11, 16-17, 19.)  Because Plaintiff's promissory estoppel claim is "founded in the contractual relationship with [the defendant]—and [the plaintiff has] not provided an independent duty owed beyond that of the contract terms," and the Court has already found Plaintiff has sufficiently stated its claim for breach of contract, Plaintiff has not stated a cause of action for promissory estoppel.  *Rastellis Bros., Inc.*, 2025 WL 399712, at \*5; *see also Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 600 n.12 (D.N.J. 2016) ("Because the [c]ourt finds that [the p]laintiff has alleged sufficient facts to set forth a cause of

11

action for breach of contract for both [defendants], the [c]ourt will not address [the p]laintiff's claims for promissory estoppel[.]"); *Corps Logistics, LLC v. Dutil*, Civ. No. 20-6683, 2021 WL 795198, at *10 (D.N.J. Feb. 28, 2021) ("[P]romissory estoppel cannot be enforced when a court finds that the parties have entered into an enforceable contract."). Therefore, Plaintiff's Motion for Default Judgment on its promissory estoppel claim is denied.

### D.     Default Judgment is Appropriate

The three additional factors that the Court must consider when determining whether default judgment is appropriate weigh in favor of Plaintiff. *See Chamberlain,* 210 F.3d at 164 (citation omitted). First, denial of Plaintiff's Motion would result in prejudice because when a defendant "fails to respond to a plaintiff's claims, the plaintiff [suffers] prejudice[] absent a default judgment because [the] plaintiff [is] left with no other means to vindicate [her] claims." *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, Civ. No. 15-5343, 2017 WL 11491955, at *3 (D.N.J. Nov. 28, 2017) (third and fifth alteration in original) (citation omitted). Second, nothing in the current record evinces any meritorious defenses to Plaintiff's claims. *See GP Acoustics, Inc. v. Brandnamez, LLC*, Civ. No. 10-539, 2010 WL 3271726, at *4 (D.N.J. Aug. 17, 2010) (noting that a "[d]efendant's failure to answer makes it practically impossible for the Court to determine whether [the defendant has] a meritorious defense") (internal quotation marks and citations omitted). Finally, Defendant's failure to respond permits the Court to draw an inference of culpability on its part. *See J & J Sports Prods., Inc. v. Tribiri-Tabara, LLC*, Civ. No. 18-13867, 2019 WL 2754955, at *3 (D.N.J. July 2, 2019) ("When a defendant has failed to answer, move, or respond to a complaint, culpability is presumed."). Default judgment is therefore appropriate regarding Plaintiff's claims for breach of contract and conversion.

12

### E.    Remedies

Having found that default judgment is appropriate, the Court now addresses the question of damages.  "Courts should accept as true the well-pleaded factual allegations of the complaint, but need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages."  *Rose Containerline, Inc. v. Omega Shipping Co., Inc.*, Civ. No. 10-4345, 2011 WL 1564637, at *1 (D.N.J. Apr. 25, 2011).  Therefore, the Court "'conduct[s] its own inquiry in order to ascertain the amount of damages with reasonable certainty.'"  *Id.* (internal citations omitted) (quoting *Int'l Assoc. of Heat & Frost Insulators v. S. Jersey Insulation Servs.*, Civ. No. 05-3143, 2007 WL 276137, at *1 (D.N.J. Jan. 26, 2007)).  Here, Plaintiff seeks damages, interest, and attorneys' fees.  (ECF No. 9-1 at 15-18.)  The Court considers each request in turn.

#### 1.    *Damages and Interest*

"In breach of contract claims, courts 'most often' award compensatory damages, which 'put the innocent party into the position he or she would have achieved had the contract been completed.'"  *Way*, 2022 WL 180327, at *9 (quoting *Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C.*, 921 A.2d 1100, 1107 (N.J. 2007)).  And "for an action of conversion, the measure of damages is the fair market value of the converted chattel," which in this case is the erroneously transferred funds.  *Anyclo Int'l Inc. v. Cha*, Civ. No. 18-5759, 2024 WL 641371, at *20 (D.N.J. Feb. 15, 2024), *reconsideration denied,* Civ. No. 18-5759, 2024 WL 2956769 (D.N.J. June 12, 2024).

Plaintiff seeks damages of $103,022.50, which is the sum of (1) the amount Plaintiff paid to Defendant under the parties' contract, less the value of the goods Plaintiff did receive and (2) the funds Plaintiff erroneously transferred to Defendant.  (ECF No. 9; ECF No. 9-1 at 18.)  To substantiate its claim for damages, Plaintiff submitted a declaration from its President in addition to supporting documentation.  (ECF No. 9-3.)  The President's declaration states that Plaintiff made

13

a payment of $123,125 to Defendant on May 21, 2024.  (*Id.* at ¶ 7; *id.* at 24 (proof of payment).)

On August 9, 2024, Plaintiff received $23,125 worth of goods.[7]  (*Id.* ¶ 18.)  Plaintiff never received

the remaining $100,000 worth of goods it paid for.  (*Id.* ¶ 19.)  Additionally, on October 10, 2024,

Plaintiff transferred $3,022.50 to Defendant.  (*Id.* ¶ 20; *id.* at 48 (proof of payment).)  These

submissions are sufficiently detailed to support Plaintiff's calculation of damages.  As the

requested damages would restore Plaintiff to the position it would have been in had the contract

been fulfilled, and reimburse Plaintiff for the value of the funds wrongfully retained, the Court

finds Plaintiff is entitled to $103,022.50, with $100,000.00 for the breach of contract claim and

$3,022.50 for the conversion claim.

Plaintiff also requests pre- and post-judgment interest.  Regarding pre-judgment interest,

"[i]n a diversity action, such as here, state law applies in determining prejudgment interest." *Way*,

2022 WL 180327, at *10.  New Jersey law applies here, and "New Jersey law dictates that '[t]he

allowance of prejudgment interest is a matter of discretion for the trial court.'"  *Michael E.

Panebianco ACC Fam. Tr. v. Vet Cellect, LLC*, Civ. No. 23-01943, 2025 WL 1284647, at *3 (D.N.J.

May 2, 2025) (alteration in original) (quoting *Cnty. of Essex v. First Union Nat. Bank*, 891 A.2d

600, 608 (N.J. 2006)).  As such, this Court has discretion to determine the rate of pre-judgment

interest.  *Id.* (quoting *Amba v. Rupari Food Servs., Inc.*, Civ. No. 10-4603, 2016 WL 6471019, at

*3 (D.N.J. Oct. 31, 2016)).  Where, as here, "[the p]laintiff has been denied the benefit of its

bargain," pre-judgment interest is appropriate.  *Humanwell PuraCap Pharms. (Wuhan) Co. v.

Apicore US LLC*, Civ. No. 24-8938, 2025 WL 2374413, at *3 (D.N.J. Aug. 15, 2025).

---

[7]  As previously discussed, the value of the goods received amounts to $23,125 rather than $23,000.  (*See* ECF No. 9-3 ¶ 18 (enumerating values of goods received).)

Because New Jersey does not have a specified statutory rate for pre-judgment interest in a contract action and the parties did not specify a rate in their contract, "'the award of pre-judgment interest on contract . . . claims is based on equitable principles.'" *Id.* (quoting *Litton Indus., Inc. v. IMO Indus., Inc.*, 982 A.2d 420, 430 (N.J. 2009)). "Awards of pre-judgment interest tend to 'bear simple interest'" and in the absence of unusual circumstances, can be calculated using the interest rates specified in New Jersey Court Rule 4:42-11(b). *Id.* (quoting *Promotion in Motion, Inc. v. Beech-Nut Nutrition Corp.*, Civ. No. 09-1228, 2012 WL 5045135, at *3 (D.N.J. Oct 17, 2012)); *United States for Use of Colorado Custom Rock Corp. v. G&C Fab-Con, LLC*, Civ. No. 20-02968, 2024 WL 4356306, at *15 (D.N.J. Oct. 1, 2024), *aff'd,* Civ. No. 24-3053, 2025 WL 3090745 (3d Cir. Nov. 5, 2025) (applying prejudgment interest as outlined in N.J. Ct. R. 4:42-11(b) to contract case).

Court Rule 4:42-11(b) states that pre-judgment interest should be calculated in accordance with Rule 4:42-11(a). *G&C Fab-Con, LLC*, 2024 WL 4356306, at *15. Court Rule 4:42:11(a)(ii) "states that simple interest should be calculated at 'the average rate of return, to the nearest whole or one-half percent, for the corresponding preceding fiscal year terminating on June 30, of the State of New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of the Treasury.'" *Id.* (quoting N.J. Ct. R. 4:42-11(a)(ii)). For judgments exceeding the monetary limit of the Special Civil Part of $20,000,[8] as is applicable here, Court Rule 4:42-11(a)(iii) permits the court, within its discretion, to add an additional 2% per year to the Cash Management Fund historical rate. *Id.* (citing N.J. Ct. R. 4:42-11(a)(iii)). As outlined by Court Rule 4:42-11(a)(ii), the Court will apply the Cash Management Fund rate of return to

---

[8]   *See* N.J. Ct. R. 6:1-2(a)(1) (stating that matters are cognizable in the Special Civil Part "when the amount in controversy does not exceed $20,000").

15

determine the pre-judgment interest rate here, but will not add 2% to that rate as equities do not demand it. *Id.* ("[T]he [c]ourt finds on balance that in this contract case the cash fund management rate alone is an appropriate compromise that provides for what [the p]laintiff might have earned on the withheld monies while simultaneously preventing undue punishment.").

Plaintiff argues that the Court should apply an interest rate of 7.5%.[9] (ECF No. 9-1 at 17.) As for the date of accrual, Plaintiff argues that pre-judgment interest should accrue from the date of this action, May 8, 2025, to the date of the entry of default judgment. (ECF No. 9-1 at 17.) As this is consistent with Court Rule 4:42-11(b), the Court agrees with Plaintiff's proposed date of accrual.[10] *See* N.J. Ct. R. 4:42-11(b). However, the Court Rule requires a different interest rate from the one Plaintiff has calculated. The Court awards pre-judgment interest on the Plaintiff's damages award ($103,022.50) in the amount of $4,595.46, as calculated in the table below.

---

[9]     Plaintiff appears to calculate this rate by taking the historical rate of return for 2025 (5.5%) and adding the discretionary 2%. *See* Website of the New Jersey Courts, "Post-Judgment and Pre-Judgment Interest Rates," available at www.njcourts.gov/sites/default/files/courts/civil/postprejudgmentrates.pdf (last accessed on Mar. 12, 2026).

[10]     The entry of judgment is the date of issue for this Memorandum Opinion and corresponding Order. *See SMP Props., LLC v. Encore Realty, LLC*, Civ. No. 20-6676, 2024 WL 1975502, at *6 n.9 (D.N.J. May 3, 2024) (holding "[c]alculation of the prejudgment interest is based on the date of this judgment, May 3, 2024," the day the Memorandum Opinion and Judgment in that case were entered).

| Year Interest Accrued | Annual Cash Management Fund Rate[11] | Damages Award | Per Diem | Days | Pre-Judgment Interest Owed |
|---|---|---|---|---|---|
| 2025 | 5.5% | $103,022.50 | $15.52[12] | 238[13] | $3,693.76 |
| 2026 | 4.5% | $103,022.50 | $12.70[14] | 71[15] | $901.70 |

Plaintiff also requests post-judgment interest pursuant to 28 U.S.C. § 1961. (ECF No. 9-1 at 17.) "28 U.S.C. § 1961 provides that '[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court.'" *Humanwell*, 2025 WL 2374413, at *3 (quoting 28 U.S.C. § 1961(a)). Post-judgment interest is mandatory and begins to accrue the day a money judgment is entered. *Id.* A "money judgment" includes "'(1) an identification of the parties for and against whom judgment is being entered; and (2) a definite and certain designation of the amount which plaintiff is owed by defendant.'" *Id.* (quoting *Eaves v. Cnty. of Cape May*, 239 F.3d 527, 533 (3d Cir. 2001)). Interest is calculated from the date judgment is entered, "'at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding.'" *Id.* (quoting 28 U.S.C. § 1961). The Court finds it appropriate to award post-judgment interest pursuant to 28 U.S.C. § 1961.

---

[11] Website of the New Jersey Courts, "Post-Judgment and Pre-Judgment Interest Rates," available at www.njcourts.gov/sites/default/files/courts/civil/postprejudgmentrates.pdf (last accessed on Mar. 12, 2026).

[12] Per diem interest was calculated as follows. For the year 2025, the interest rate is 5.5% per annum. 5.5% of $103,022.50 is $5,666.24. That amount divided by 365 days in a year equals the amount of interest due per diem, $15.52.

[13] Interest accrued from May 8, 2025, to December 31, 2025.

[14] Per diem interest was calculated as follows. For the year 2025, the interest rate is 4.5% per annum. 4.5% of $103,022.50 is $4,636.01. That amount divided by 365 days in a year equals the amount of interest due per diem, $12.70.

[15] Interest accrued from January 1, 2026, to the date judgment was issued, March 12, 2026.

### 2.    *Attorneys' Fees*

Plaintiff also seeks an award of attorneys' fees.  (ECF No. 1 at 5-7; ECF No. 9-1 at 18.) Plaintiff cites no basis for such an award.  New Jersey applies the "American Rule," where "the prevailing party is prohibited from recovering attorneys' fees against the losing party. . . . Nonetheless, attorneys' fees can be recovered 'if they are expressly provided for by statute, court rule, or contract.'"  *Am. S. Home Ins. Co. v. Unity Bank*, Civ. No. 16-3046, 2019 WL 861247, at *5 (D.N.J. Feb. 14, 2019) (citations omitted) (quoting *Litton Indus., Inc.* 982 A.2d at 427). Regarding Plaintiff's breach of contract claim, "New Jersey permits a prevailing party to recover attorneys' fees and expenses in connection with a claim based on a contract, if the contract so provides."  *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, Civ. No. 05-3452, 2008 WL 2967067, at *8 (D.N.J. July 31, 2008).  The parties' contract does not provide for attorneys' fees. (*See* ECF No. 1 at 18-21.)  Regarding Plaintiff's conversion claim, "New Jersey courts do not permit plaintiffs to recover attorney's fees in conversion cases."  *Connors v. Hixon*, Civ. No. 22-07027, 2023 WL 3145155, at *3 (D.N.J. Apr. 27, 2023).  As such, the Court denies Plaintiff's request for attorneys' fees.

## IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Plaintiff's Motion for Default Judgment (ECF No. 9) is **GRANTED in part** and **DENIED in part**.  An appropriate Order follows.

Dated: March 12, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

18